UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RODNEY PAUL AUGER, | ) |
| | ) |
|          Plaintiff | ) |
| | ) |
| v. | )    No. 2:15-cv-100-JHR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|          Defendant | ) |

## MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge improperly gave little weight to the opinions of treating sources Judy Welch, M.D., and James F. Findlay, D.O., and great weight to the opinions of agency nonexamining consultants Donald Trumbull, M.D., and Carl Runge, M.D., and erred in evaluating the plaintiff's credibility. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 11) at 10-20; *see also* Plaintiff's Motion To Remand (ECF No. 12).[2] I find no reversible error and, accordingly, affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 19.

[2] The Motion To Remand simply seeks remand on the same bases as the Statement of Errors.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, Finding 1, Record at 18; that he had a severe impairment of degenerative disc disease of the lumbar spine, Finding 3, *id*. at 19; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) and could balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds occasionally and should avoid unprotected heights and irregular terrain, Finding 5, *id*. at 21; that, considering his age (38 years old, defined as a younger individual, on his alleged disability onset date, September 6, 2011), education (a limited eighth-grade education), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 24; and that he, therefore, had not been disabled from September 6, 2011, through the date of the decision, September 3, 2014, Finding 11, *id*. at 25.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Alleged Errors in Weighing Medical Opinion Evidence

#### 1. Treatment of Treating Sources

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[3] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but

---

[3] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

3

"must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

### a. Dr. Welch

The plaintiff, a former auto mechanic, sustained a work-related back injury on September 6, 2011, his alleged onset date of disability, while assisting a co-worker in lifting an engine from a truck. *See* Record at 321. He established care with Dr. Welch, his primary care physician, on February 15, 2013, complaining of back pain and anxiety. *See id*. at 389-90. She subsequently saw him on March 5, 2013, *see id*. at 388; March 14, 2013, *see id*. at 386; April 9, 2013, *see id*. at 384; May 14, 2013, *see id*. at 378; August 7, 2013, *see id*. at 375; October 24, 2013, *see id*. at 374; November 1, 2013, *see id*. at 373; January 29, 2014, *see id*. at 412; April 28, 2014, *see id*. at 411; and July 23, 2014, *see id*. at 410.

Dr. Welch submitted a medical form dated July 26, 2013, in which she checked a box indicating that the plaintiff was disabled and stated that he had been since September 6, 2011. *See id*. at 363. Subsequently, she provided two other opinions, both dated October 24, 2013: a letter to the plaintiff's attorney stating that the plaintiff could not do competitive full-time work at that time and that his limitations included an inability even to shower at times or to bend, twist, stoop, or pick anything up, *see id*. at 364, and answers to a questionnaire indicating that the plaintiff had a number of functional limitations, including an ability to sit for only up to one hour in an eight-hour workday, stand/walk for only one hour in an eight-hour workday, and lift/carry no more than five pounds occasionally, with marked restrictions in grasping, turning, and twisting objects, using his fingers/hands for fine manipulation, and using his arms for reaching, *see id*. at 365-72.

The administrative law judge gave "little to no weight" to these opinions, explaining:

4

> Although Dr. Welch is the [plaintiff's] treating physician, . . . the extreme degree of back related limitations cited is not supported in her contemporaneous treatment records, or in the longitudinal record. The limitations cited appear to be based in large part on the [plaintiff's] subjective allegations, particularly where Dr. Welch noted in her office note dated October 24, 2013, that the [plaintiff] was there to review and fill out paperwork at her lawyer's request. It should also be noted that the evidence fails to document the existence of a medically determinable impairment that could reasonably be expected to result in the upper extremity limitations, or in the inability to keep the neck in a constant position cited in October, 2013.

*Id*. at 23 (citation omitted).

The plaintiff argues that the Welch opinions should have been given controlling weight, or adopted based on proper consideration of the relevant factors, in that:

1. There is no evidence that they are predicated primarily on his subjective statements rather than the available medical evidence. *See* Statement of Errors at 11. Dr. Welch stated that they were based on CT scan and x-ray findings, fingertip numbness, severe low back pain radiating into both legs and feet, numbness and tingling in both feet, fatigue, depression, nausea, lack of motivation, and a feeling of numbness in the back, occasionally into the shoulder. *See id*. A CT scan of the thoracic spine showed chronic degenerative changes with spondylosis, including bone spurs on the anterior portions of T6-7 and T11-12 and Schmorl's nodes on the inferior portion of the vertebral body of T9, and x-rays of the lumbar spine revealed sclerosis of the sacroiliac joints bilaterally at the iliac and sacral side, and spurring on the anterior vertebral body. *See id*. In addition, clinical examinations revealed abnormalities including paraspinal muscle tenderness/pain on palpation, limited spine motion, positive straight leg raising, reduced sensation, and muscle weakness. *See id*. In any event, it is good practice for a doctor to consider a patient's subjective statements along with available clinical and diagnostic testing. *See id*. at 11-12.

2. The administrative law judge failed to identify substantial evidence contradicting the Welch opinions. *See id*. at 12.

3. The administrative law judge suggested that it was inappropriate for the plaintiff to request that Dr. Welch complete a functional capacity evaluation provided by counsel; however, the commissioner actively encourages claimants to obtain such reports. *See id*. at 12-13.

4. All of the relevant factors counsel in favor of the adoption of the Welch opinions: Dr. Welch had treated the plaintiff regularly since February 2013, she had focused on his disabling back condition, she supported her opinions with a detailed report on his diagnoses, symptoms, and objective medical findings, and her findings were consistent with her own notes, treatment notes from earlier treating practitioners, including specialists, and Dr. Findlay's opinions that the plaintiff could not perform any work. *See id*. at 14.

However, as the commissioner counters, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 4-7, the administrative law judge provided good reasons for declining to credit the Welch opinions, supportably concluding that:

1. The objective evidence failed to support the extreme limitations that Dr. Welch assessed. As the administrative law judge noted, *see* Record at 21-22, (i) an MRI of the lumbar spine dated September 27, 2011, showed a "[s]uperiorly migrated right paracentral L1-2 disc protrusion" that did "not result in significant compression," although it might have "contribute[d] to [the plaintiff's] localized back pain[,]" and "otherwise mild degenerative changes with no significant canal narrowing or identifiable root compression[,]" *id*. at 298, and (ii) an x-ray of the lumbar spine dated July 18, 2012, taken to rule out a fracture following a motor vehicle accident, showed no evidence of an acute fracture but revealed sacroilitis with "[s]purring of the anterior vertebral bodies in the lumbar region likely secondary to a degenerative disease[,]" *id*. at 325, 398.

At oral argument, the plaintiff's counsel asserted that the administrative law judge mischaracterized a July 18, 2012, CT scan of the thoracic spine as "essentially negative," *id*. at 21-

22, because, although the radiologist found no evidence of a thoracic spine fracture in the wake of the plaintiff's motor vehicle accident, he also noted that the plaintiff did "have a fair amount of chronic degenerative changes with spondylosis including bone spurs on the anterior portions of T6-7 and T11-12 as well as a Schmorl's node on the inferior portion of the vertebral body of T9[,]" *id*. at 396. As counsel for the commissioner rejoined, the characterization is technically correct: the CT scan was taken for the purpose of ruling out evidence of fracture following the plaintiff's motor vehicle accident, and found none. *See id*. In any event, as counsel for the commissioner argued, even assuming error, the plaintiff does not demonstrate that it was harmful in the sense that the July 18, 2012, CT scan revealed a degree of degenerative disc disease different in kind or degree from that taken into account by state-agency nonexamining consultants, Drs. Trumbull and Runge. *See id*. at 69, 71, 81-83.

      2.     Evidence of findings on physical examination did not support Dr. Welch's extreme limitations. As the administrative law judge explained, *see id*. at 21, while the plaintiff had been noted to have limited lumbar motion due to discomfort, as well as lumbar tenderness, his straight leg raising tests were only intermittently positive, *compare, e.g., id*. at 300, 303 *with id*. at 292, 296, 347, and findings on examination were otherwise typically negative, *see, e.g., id*. at 292, 296, 300, 311, 315, 318, 325, 327-28, 341, 347.

      At oral argument, the plaintiff's counsel complained that the administrative law judge impermissibly cherry-picked the evidence, ignoring positive findings on examination, particularly those of Dr. Findlay, while highlighting an absence of findings that he, as a layperson, improperly concluded were necessary to a determination of disability. Specifically, the plaintiff's counsel noted that, (i) on examination, Dr. Findlay made findings of a significant increase in pain when the plaintiff rose up on his toes, an inability to lift his heels, significantly limited motion of his

spine, positive straight leg raising, and reduced sensation, *see, e.g., id*. at 318, 322, (ii) Michael A. Binette, M.D., to whom Dr. Findlay referred the plaintiff for a consultation on the advisability of back surgery, found a limited range of motion due to discomfort, pain along the left side of the plaintiff's back, and breakaway strength in all major muscle groups of the plaintiff's lower extremities, *see id*. at 311, and (iii) John Hall, M.D., who evaluated the plaintiff on October 3, 2012, for complaints of pain primarily in the lower back, found limited extension and flexion of the back due to pain as well as exquisite tenderness to palpation in the bilateral lumbar paraspinal muscles, *see id*. at 347. He added that, on at least one occasion, in February 2013, Dr. Welch found back tenderness with a generally decreased range of motion. *See id*. at 389.

Counsel for the commissioner rejoined that, while the plaintiff identifies evidence of record supporting a finding of disability, the administrative law judge took it into account but reached a different conclusion supported by substantial evidence. I agree.

The administrative law judge did not ignore the existence of positive findings on examination of lumbar pain and restriction of motion and intermittent positive straight leg raising tests. He acknowledged them. *See id*. at 21. Yet, he supportably deemed it significant that, over the longitudinal course of treatment, findings on examination were otherwise typically negative. *See id*. As counsel for the commissioner pointed out at oral argument, the positive findings on which the plaintiff relies derive almost entirely from examinations conducted within the first few months after his back injury: Dr. Findlay treated him from September 15, 2011, through February 2, 2012, *see, e.g.*, *id*. at 305-23, and Dr. Binette evaluated him on November 8, 2011, *see id*. at 310-11. While Dr. Hall evaluated the plaintiff on October 3, 2012, making positive findings that the plaintiff's counsel highlighted, he also made a number of negative findings that the administrative law judge, even as a layperson, reasonably could deem significant:

> On evaluation of gait and station, the [plaintiff] ambulates without difficulty. On inspection, there is not evidence of misalignment or deformity, other than the [plaintiff] tends to want to walk bent slightly forward. Range of motion is within functional limits over all 4 extremities. Straight leg raises are negative. . . . No evidence of joint instability or ligament laxity. Muscle strength is 5/5 throughout. Tone is within normal limits.

*Id*. at 347.

In sum, the administrative law judge supportably concluded that, on the whole, findings on physical examination did not support the degree of limitation assessed by Dr. Welch.

3. The plaintiff had received conservative care, weighing against adoption of the Welch opinions. As the administrative law judge noted, *see id*. at 22, Dr. Binette indicated on November 8, 2011, that he was hesitant to recommend any surgical intervention based on clinical findings and MRI scans, instead recommending physical therapy for a work hardening program and core strength, *see id*. at 292. On examination that day, Dr. Binette noted that the plaintiff had three of five Waddell signs with breakaway strength in all of the major muscle groups of the lower extremity. *See id*. Waddell signs are "behavioral responses to physical examination that indicate the presence of nonorganic – *e.g*., psychological, social or behavioral – involvement in lower back pain[.]" *Ormon v. Astrue*, 497 Fed. Appx. 81, 86 (1st Cir. 2012). The plaintiff was treated with physical therapy, injections, a TENS unit, ice, heat, and medication management. *See, e.g.,* Record at 291, 296-97, 348-54, 359, 362, 389, 405.

At oral argument, the plaintiff's counsel contested the characterization of his client's treatment as "conservative," asserting that he tried all modalities of relief available to him, including physical therapy, narcotic pain medication, trigger point injections, and epidural steroid injections, with little or no relief or functional improvement. He also challenged any inference drawn from the presence of three of five Waddell signs that he was malingering, noting that no treating source, including Dr. Binette, made such a suggestion. I find no error. The administrative

9

law judge made no finding that the plaintiff was a malingerer. *See id.* at 21-23. However, he supportably found that Dr. Binette's findings called into question that the plaintiff suffered disabling symptomatology that was attributable to his sole severe medically determinable impairment, degenerative disc disease. *See id.* at 22.[4]

    4.    Dr. Welch's limitations appeared to be based in large part on the plaintiff's subjective allegations. The administrative law judge correctly noted, *see id.* at 23, that Dr. Welch devoted the plaintiff's office visit of October 24, 2013, to completing disability paperwork, *see id.* at 374. Indeed, she did not examine the plaintiff during that visit, merely recording his subjective complaints. *See id.* Moreover, while Dr. Welch's treatment notes describe the plaintiff's subjective pain complaints in significant detail, they are almost completely devoid of objective examination findings related to his back condition. *See id.* at 373-95, 410-12. Her only objective findings regarding the plaintiff's back impairment were that he appeared to have discomfort with sitting and/or standing at two appointments, with decreased range of motion noted during one of those visits, *see id.* at 373, 389, 410, and that he had tender paraspinal muscles in his low back at one appointment, *see id.* at 411. While, as the plaintiff notes, *see* Statement of Errors at 11-12, it was entirely proper for Dr. Welch to elicit and take into account his subjective allegations, it was no less proper for the administrative law judge to accord less weight to her opinions on the ground that they appeared to be based primarily on his subjective complaints, *see, e.g., Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (the existence of inconsistencies between a treating source's notes and conclusions, as well as the apparent basing

---

[4] The plaintiff's counsel also stated that a finding of three or more Waddell signs can correlate with high scores for depression. He cited no authority for that proposition, but assuming its truth, it is not inconsistent with a finding that the plaintiff's alleged symptoms were disproportionate to his degenerative disc disease. To the extent that the plaintiff's symptoms may have been attributable to depression, he does not challenge the administrative law judge's finding that he had no severe mental impairment.

of his or her opinion primarily on a claimant's subjective allegations of pain, are "well-recognized bases in Social Security law for rejection of a treating physician's conclusions") (footnote and citation omitted). The administrative law judge did not improperly discount the Welch opinions on the basis that the plaintiff asked her to fill out disability paperwork but, rather, on the proper basis that the circumstances in which the paperwork was completed bolstered a finding that Dr. Welch relied primarily on the plaintiff's subjective complaints. *See* Record at 23.

5.  Dr. Welch had assessed significant limitations in the plaintiff's ability to use his hands and arms that did not appear to result from any medically determinable impairment, *see id.* – a proposition that the plaintiff does not contest, *see* Statement of Errors at 11-14. Those limitations, hence, were properly ignored. *See, e.g.*, Social Security Ruling 96-3p, reprinted in West's Social Security Reporting Service Rulings 1983-1991 (Supp. 2015) ("SSR 96-3p"), at 117 ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s)[.]").

In sum, the administrative law judge provided good reasons for rejecting the Welch opinions. No more was required.

### b. Dr. Findlay

Dr. Findlay, of the Centers for Orthopaedics, treated the plaintiff from September 15, 2011, nine days after his alleged onset date of disability, through February 2, 2012. *See, e.g.*, Record at 305-23. Dr. Findlay noted that the plaintiff "self-referred for evaluation of the recent onset of acute left low back, posterior buttock, hamstring, and proximal calf pain, onset almost immediately following lifting a car engine on a pallet with a co-worker out of the back of a truck on September

11

6, 2011." *Id.* at 321. He submitted several "M-1" forms to the State of Maine Workers' Compensation Board in which he checked a box indicating that the plaintiff had no work capacity. *See id.* at 287, 290, 301, 304, 306, 309, 319, 323. Michael J. Totta, M.D., of the same practice, who treated the plaintiff with spinal injections during that time period, also completed several M-1 forms in which he checked the same box. *See id.* at 295, 314.

The administrative law judge accorded the Findlay and Totta opinions little weight "as they are not supported by their examination findings, and the determination of whether an individual is disabled, and thus unable to work, is an issue reserved to the Commissioner." *Id.* at 23.

The plaintiff complains that the administrative law judge failed to explain how the Findlay opinions were unsupported by examination findings, frustrating judicial review. *See* Statement of Errors at 15. He adds that the fact that a treating source provides an opinion on an issue that is "reserved" to the commissioner is not a proper basis on which to reject it. *See id.* at 15-16. Finally, he argues that multiple relevant factors weighed in favor of the adoption of the Findlay opinions: Dr. Findlay treated him regularly between the time of his initial injury and February 2012, the treatment focused on his disabling back pain, and Dr. Findlay's findings are consistent with those of Dr. Welch. *See id.* at 16.

As the commissioner rejoins, *see* Opposition at 7, the administrative law judge summarized records that included those of Dr. Findlay in concluding that many findings on examination were negative and that the plaintiff received only conservative care, *see* Record at 21-22 (citing, *inter alia*, Exhibits 1F and 2F, which contain the Findlay notes, *see id.* at 286-323). The fact that the opinion addressed an issue reserved to the commissioner, in combination with its lack of support in the examination findings of record, was a valid reason to accord it less weight. *See, e.g.*, Social Security Ruling 96-5p, reprinted in West's Social Security Reporting Service Rulings 1983-1991

(Supp. 2015) ("SSR 96-5p"), at 123-24 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

### 2. Weight Accorded to Opinions of Agency Nonexamining Consultants

The administrative law judge gave "great weight" to the RFC opinions of Drs. Trumbull and Runge, explaining:

> As non-examining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act (SSR 96-6p). While new and material evidence does support occasional rather than frequent postural limitations and the need to avoid unprotected heights and irregular terrain, the State agency medical consultants' physical assessments for light work . . . are generally well supported and consistent with the evidence as a whole.

Record at 24 (citations omitted).

The plaintiff complains that the administrative law judge's reliance on Drs. Trumbull and Runge was misplaced in that neither specified what evidence he had reviewed, neither had the benefit of review of the Welch opinions, which were subsequently entered into the record, and both mischaracterized the objective evidence of record as "unremarkable." *See* Statement of Errors at 13. He adds that neither Dr. Trumbull nor Dr. Runge is board-certified, and Dr. Trumbull specializes in emergency medicine and Dr. Runge in geriatric medicine. *See id.* at 13 nn. 20, 22. At oral argument, the plaintiff's counsel elaborated that, even assuming that Drs. Trumbull and Runge did review then-available records, the fact that they deemed treating sources' findings on examination "unremarkable" suggests that they cannot have reviewed them carefully because it is wrong, undercutting the validity and weight of their opinions.

While it is true that, in the RFC section of the Disability Determination Explanation forms, neither Dr. Trumbull nor Dr. Runge specified the evidence that he had reviewed, *see* Record at 71-72, 82-84, the then-available medical evidence was set forth in the Evidence of Record section of

13

those forms and summarized in the Findings of Fact and Analysis of Evidence section, *see id*. at 67-69, 77-80. Drs. Trumbull and Runge reasonably can be presumed to have reviewed the evidence summarized in the latter section. In the case of Dr. Trumbull, this included records for the period through January 4, 2013, *see id*. at 68-69, and in the case of Dr. Runge, for the period through May 14, 2013, *see id*. at 80.

Dr. Trumbull explained that he assessed exertional and postural limitations as a result of "focal lumbar DDD/DJD [degenerative disc disease/degenerative joint disease] w/o [without] evidence of neural impingement, instability or stenosis" and "unremarkable" objective physical examinations, *id*. at 71-72, and Dr. Runge concurred, *see id*. at 83. Drs. Trumbull and Runge also agreed, in assessing the credibility of the plaintiff's allegations from a medical viewpoint, that the medical evidence supported some limitation but that there were no objective findings on examination or imaging that supported the degree of impairment alleged. *See id*. at 71, 82.

For the reasons discussed above, treating sources' findings on examination of the plaintiff fairly can be characterized as largely, if not entirely, unremarkable. In any event, even assuming *arguendo* that Drs. Trumbull and Runge mischaracterized those findings, they deemed the plaintiff's subjective complaints partially credible and assessed significant limitations, including a limitation to light work. *See id*. at 71-72, 82-83. The plaintiff fails to specify what limitations were omitted. *See* Statement of Errors at 13; *see also, e.g., Bourret v. Colvin*, No. 2:13-cv-00334-JAW, 2014 WL 5454537, at *4 (D. Me. Oct. 27, 2014) (Claimant failed to "specify what it is about or within each such exhibit that would require state-agency physicians to come to different conclusions. This is a showing that must be made by the appealing claimant.").

As the commissioner contends, *see* Opposition at 9, the fact that Drs. Trumbull and Runge did not have the benefit of review of the Welch opinions is not fatal to the administrative law

judge's reliance on their opinions because he supportably rejected the Welch opinions, *see, e.g., Bourret,* 2014 WL 5454537, at *4 (administrative law judge may rely on agency nonexamining consultant's opinion that predates treating source's opinion when administrative law judge provides adequate reasons for rejecting the latter opinion).

At bottom, this is a case in which the administrative law judge supportably resolved sharp conflicts in the medical opinion evidence of record, as he was obliged to do. As counsel for the commissioner contended at oral argument, while there is evidence of record supporting the plaintiff's position, it is not the job of the court to reweigh the evidence. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). Absent harmful error in the manner in which the administrative law judge weighed conflicting medical opinions, which the plaintiff fails to demonstrate, there is no basis on which to disturb his assessment.

## B. Alleged Error in Credibility Determination

The administrative law judge concluded that the plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms but deemed his statements not entirely credible. *See* Record at 21. He explained, as noted above, that the objective medical evidence, including findings on physical examination and imaging studies, did not support the plaintiff's claimed extreme limitations, that the plaintiff had not required surgery, and that he had received only conservative care. *See id.* at 21-22. He added that:

1. While the plaintiff testified that he had last worked on September 6, 2011, when he hurt his back, this was "somewhat misleading, as new hire queries show that he worked at Harraseeket Inn during the second quarter of 2013, and earned $3,740.00 during that period." *Id.* at 22 (citation omitted).

2. Although the plaintiff claimed that he had numbness in his hands and fingers, there was no evidence of the existence of a medically determinable impairment that could reasonably be expected to cause those symptoms. *See id*.

3. Although the plaintiff testified that he needed help using the toilet and had to elevate his legs frequently, those assertions were not substantiated by the evidence. *See id*.

4. The physical and emotional demands of the plaintiff's activities of daily living contradicted the nature and degree of impairment he alleged, further undermining his credibility. *See id*. He was "capable of performing a wide range of activities of daily living[,] including caring for his personal needs and hygiene, preparing simple meals, helping with housework, the dishes, and laundry, attending medical appointments, shopping, managing money, paying bills, and driving an automobile[,]" as well as "watch[ing] television without apparent difficulties concentrating[,]" going for walks, talking to others on the phone, maintaining some friendships, and visiting with friends and family members. *Id*. at 22-23 (citations omitted).

"The credibility determination by the ALJ [administrative law judge], who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

The plaintiff complains that the credibility determination is unsupported by substantial evidence because:

1. While the administrative law judge referred to some normal findings on examination, he failed to cite any medical or legal authority that those findings were relevant, or at least more relevant than the extensive clinical and diagnostic abnormalities identified by treating physicians. *See* Statement of Errors at 18. He impermissibly cherry-picked normal findings from

medical examinations and mischaracterized the CT scan of the plaintiff's thoracic spine as normal when, in fact, it demonstrated chronic degenerative changes with spondylosis, including bone spurs and Schmorl's nodes. *See id.* at 18-19.

2. While Dr. Binette recommended against surgery, that recommendation in itself did not mean that the plaintiff was not disabled. *See id.* at 19 & n.24. In any event, Dr. Findlay recommended that the plaintiff obtain a second opinion on surgery, and the plaintiff has been unable to afford to do so – an inability that the commissioner has recognized cannot be held against a claimant. *See id.* at 19. Later diagnostic imaging (in July 2012) revealed degenerative changes in the thoracic spine as well as the lumbar spine. *See id.* In addition, a later treatment note indicated that the plaintiff likely had myofascial pain, which cannot be treated by surgery. *See id.*

3. The administrative law judge relied on evidence that the plaintiff had worked in 2013 without questioning him at hearing to determine if he had worked, or if this was a mistake. *See id.* at 20.

4. The administrative law judge erred in assuming that, because the plaintiff could perform some sporadic activities of daily living, his allegations of disability were not credible. *See id.* (citing *Johnson v. Astrue*, 597 F.3d 409, 414 (1st Cir. 2009)); *see also Johnson*, 597 F.3d at 414 (fact that claimant could engage in some activities of daily living such as light housework, meal preparation, and driving short distances was not necessarily inconsistent with treating physician's opinion that the claimant could sit for four hours per eight-hour day and walk and stand for one hour each during the same time period).

Nonetheless, as the commissioner rejoins, *see* Opposition at 9-13, the administrative law judge's credibility determination is sufficiently supported to pass muster pursuant to the applicable deferential standard.

First, as discussed above, the administrative law judge reasonably deemed the plaintiff's claims of disabling pain inconsistent with examination evidence showing that, despite notations of limited lumbar motion due to discomfort and lumbar tenderness, his straight leg raising tests were only intermittently positive and his examinations were otherwise typically negative. At oral argument, the plaintiff's counsel contended that the administrative law judge impermissibly "played doctor" when he deemed it significant that, on examination, the plaintiff had no spinal misalignment or deformity, muscle spasms, atrophy, gait abnormality, or motor or sensory loss. For several reasons, I am unpersuaded that the administrative law judge's reliance on such negative findings was misplaced. First, the plaintiff's treating sources themselves deemed it significant to report those negative findings. Second, the findings are of obvious significance even to a layperson: positive findings in any of those categories would have suggested a greater degree of functional limitation. Third, and finally, Drs. Johnson and Runge also evidently deemed these negative findings significant, citing a lack of objective findings on examination or imaging supporting the degree of impairment alleged. *See* Record at 71, 82.

Second, as the commissioner observes, *see* Opposition at 10-11, Dr. Findlay's notes rebut the plaintiff's claim that his finances prevented him from obtaining a second opinion on surgery. On January 5, 2012, Dr. Findlay stated that the plaintiff "reports that workers' comp immediately agreed to a 2nd surgical opinion with Dr. Agren" but that the plaintiff was having difficulty getting an appointment, and Dr. Findlay was going to assist him in doing so. Record at 288.

Third, the "impression" of the radiologist reviewing the July 18, 2012, CT scan of the plaintiff's thoracic spine was that there was no evidence of a thoracic spine fracture. *Id*. at 396. While the radiologist did note, in his "findings" section, that the plaintiff had "a fair amount of chronic degenerative changes with spondylosis including bone spurs" and "a Schmorl's node[,]"

he did not correlate those findings to any claimed pain. *Id*. At oral argument, the plaintiff's counsel contended that the July 2012 CT scan demonstrated that his client suffered from chronic degenerative findings, including spondylosis and spurring, supporting not only Dr. Welch's opinion but also the plaintiff's subjective allegations. Yet, Drs. Trumbull and Runge found, and the administrative law judge determined, that the plaintiff suffered from severe degenerative disc disease. *See id*. at 19, 69, 71, 81-82. The plaintiff fails to make a persuasive case that the July 2012 CT scan report called into question either the administrative law judge's rejection of the Welch opinion or his negative credibility finding.

Fourth, as the commissioner notes, *see* Opposition at 12, the administrative law judge permissibly found that the plaintiff's activities of daily living tended to erode his credibility. At oral argument, the plaintiff's counsel asserted that none his client's activities was inconsistent with a finding of disability, noting that he testified, *inter alia*, that he could not sit or stand for very long, did not shop, vacuum, clean, or do laundry, and could drive for only 10 minutes before he had to pull over and stretch. However, as counsel for the commissioner rejoined, the administrative law judge found this very *testimony* less than credible based on evidence elsewhere in the record indicating, among other things, that the plaintiff cared for his personal needs and hygiene, prepared simple meals, helped with the housework, did dishes and laundry, attended medical appointments, shopped, and drove an automobile. *See* Record at 22-23.

"[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations." *Rucker v. Colvin*, No. 2:13-cv-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted). *Johnson* is distinguishable in that it

19

concerned the supportability of an administrative law judge's reliance on activities of daily living to reject a treating physician's opinion premised on fibromyalgia. *See Johnson*, 597 F.3d at 414.

<u>Fifth</u>, and finally, the plaintiff fails to make a persuasive case that the administrative law judge erred in relying on the seeming discrepancy between his testimony that he had last worked in 2011 and work records indicating that he had worked in 2013 without affording him an opportunity to provide an explanation. As the commissioner notes, *see* Opposition at 13, "[t]he inconsistency was plain on the face of the evidence[.]"

The plaintiff fails to demonstrate his entitlement to a remand based on asserted error in the administrative law judge's credibility determination.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 15th day of January, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge